# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# ELKINS

**LAMAR OUTDOOR ADVERTISING,**
a West Virginia Corporation, and
**LAMAR TEXAS LIMITED PARTNERSHIP,**
a Texas Limited Partnership,

    Plaintiffs,

v.

**THE CITY OF WESTON,**

    Defendant.

Civil Action No. 2:17-CV-82
(BAILEY)

## ORDER DENYING DEFENDANT CITY OF WESTON'S MOTION TO DISMISS AND RENEWED MOTION FOR SUMMARY JUDGMENT

### I.    Introduction

Pending before this Court is Defendant City of Weston's Motion to Dismiss and Renewed Motion for Summary Judgment [Doc. 41], filed on May 11, 2018. Specifically, the defendant moves pursuant to Rule 12(b)(1) for an order dismissing the new allegations set forth in the plaintiff's Second Amended Complaint for lack of subject matter jurisdiction. The Motion has been fully briefed and is ripe for decision. For the reasons that follow, this Court denies defendant's Motion [Doc. 41].

### II.    Factual and Procedural History

In August 2016, plaintiff approached the Lewis County Board of Education ("BOE") about constructing a billboard on the corner of Court Avenue and Third Street. By August 17, 2016, plaintiff and the BOE had agreed to enter into a 10-year lease agreement [Doc.

1

37 at ¶ 4]. On the same date, the City of Weston ("Weston"), sent a letter to the BOE requesting the BOE "reconsider [its] recent decision to allow the placement of a billboard" at the agreed-upon location [Id. at ¶ 5]. Plaintiff and the BOE formally executed the Sign Location Agreement on October 10 and October 17, respectively [Doc. 37 at 7-8]. Plaintiff's building permit was presented to defendant and subsequently denied on January 18, 2017 [Doc. 37 at ¶ 8].

On December 5, 2016, the defendant enacted an ordinance for its municipality regulating the location of billboards within its city limits [Doc. 37 at ¶ 7]. Section 1 provides the ordinance's purpose and findings [Doc. 37 Section 1(a)]. It states, among other things, "[t]hat outdoor advertising is a legitimate, commercial use of private property adjacent to roads and highways" and "[t]hat outdoor advertising is "an integral part of the business and marketing function of an establishment segment of the national economy which serves to promote and protect private investments in commerce and industry." [Id. at Section 1(b)]. Section 2 contains definitions of "sign", "display", and "device." Section 4[1] provides twelve general restrictions to outdoor advertising. Provisions include, among others, a restriction on attempting or purporting to direct traffic (Section 4.4); size, height, and location restrictions (Sections 4.8-4.11); and restrictions on content regarding direct and indirect references to "obscene, abusive, or offensive language, act, or depiction deemed not appropriate for display within the City of Weston" and a limitation on the number of advertisements of certain subjects such as alcohol, gambling, tobacco, or nudity (Section 4.12). Section 5 provides exceptions to the restrictions outlined in Section 4. These

---

[1] The Ordinance does not appear to contain a Section 3.

exceptions include "directional or other official sign and notices required or otherwise authorized by law…", on-premises signs for sale/lease, advertising for activities conducted on-premises, and "signs, displays, and devices giving specific information in the interest of the traveling public, which may be erected and maintained pursuant to authorization of the Mayor, within the rights-of-way of roadways and highways." [Id. at Section 5(a)-(d)]. Section 6 outlines the territory over which the ordinance governs and Section 7 outlines the penalties for violations of the ordinance [Id.].

Plaintiff filed its Complaint[2] in this Court on June 23, 2017 [Doc. 1]. Therein, plaintiff asserted three claims: Count I – Unconstitutional Restriction on Freedom of Speech; Count II – Taking of Private Property for Government Use; and Count III – Tortious Contractual Interference.

In its Second Amended Complaint [Doc. 37], filed April 27, 2018, plaintiffs challenge the constitutionality of the City of Weston's Outdoor Advertising Ordinance in its entirety, both facially and as applied to it and third parties.

Plaintiff alleges:

1. That Section 4.12 is a content based restriction because it "overly restricts advertising of certain products (alcohol, tobacco) and activities (gambling, activities referring to nudity or of a 'lewd, indecent, lascivious or obscure nature)'";

2. "Section 5 of the Ordinance exempts certain categories of speech from all general prohibitions in Section 4 based upon the content of

---

[2] On September 18, 2017, plaintiff amended its Complaint pursuant to F.R.Civ.P. 15(a)(2) to include its parent corporation, Lamar Texas Limited Partnership [Doc. 16].

3

> the message";
>
> 3. Section 5 contains "an impermissible prior restraint on the exercise of the First Amendment by exempting from the entire regulatory scheme certain 'signs, displays and devices giving specific information in the interests of the traveling public which may be erected and maintained pursuant to the authorization of the Mayor, within the rights of way of roadways and highways'";
>
> 4. "That a plain reading of the ordinance demonstrates that it is overly broad and impermissibly favors some commercial and non-commercial speech based upon the content of the message;" and
>
> 5. "That the ordinance is not narrowly tailored enough to pass constitutional muster because the exemptions found in Section 5 functionally invalidate the general restrictions based on the content of the message."

### III. Rule 12(b)(1) Motion to Dismiss Standard

"The standing doctrine is an indispensable expression of the Constitution's limitation on Article III courts' power to adjudicate 'cases and controversies.' **Allen v. Wright**, 468 U.S. 737, 750-51 (1984). The burden of establishing standing to sue lies squarely on the party claiming subject-matter jurisdiction. **Lujan v. Defenders of Wildlife**, 504 U.S. 555, 561 (1992)." **Frank Krasner Enterprises, Ltd. v. Montgomery Cty.**, 401 F.3d 230, 234 (4th Cir. 2005).

"To establish 'a case or controversy' within the meaning of Article III, plaintiff must

show the following as an 'irreducible minimum':  *Injury in fact:* An 'injury in fact' which is concrete and not conjectural; *Causation:*  A causal connection between the injury and defendant's conduct or omissions; and *Redressability:*  A likelihood that the injury will be redressed by a favorable decision.  **Lujan v. Defenders of Wildlife** (1992) 504 US 555, 560–561; **Sprint Communications Co., L.P. v. APCC Services, Inc**. (2008) 554 US 269, 274." Schwarzer, Tashima & Wagstaffe, *Fed. Civil Procedure Before Trial* [2:4106] (2011).

"[T]he injury-in-fact element requires that the plaintiff 'suffer an invasion of a legally protected interest which is concrete and particularized, as well as actual or imminent.' **Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.,** 204 F.3d 149, 154 (4th Cir. 2000) (en banc) (citing **Defenders of Wildlife,** 504 U.S. at 560).  The alleged injury must not be 'conjectural or hypothetical.' [**Friends of the Earth, Inc. v.**] **Laidlaw** [**Envtl. Servs. (TOC), Inc.**], 528 U.S. at 180;  **Defenders of Wildlife,** 504 U.S. at 560 (internal quotations omitted). The traceability requirement ensures that it is likely the plaintiff's injury was caused by the challenged conduct of the defendant, and not by the independent actions of third parties not before the court.  **Gaston Copper,** 204 F.3d at 154 (citing **Defenders of Wildlife,** 504 U.S. at 560).  And the redressability prong requires that it be likely, and not merely speculative, that a favorable decision from the court will remedy the plaintiff's injury.  *Id.* (citing **Defenders of Wildlife,** 504 U.S. at 561)." **Friends for Ferrell Parkway, LLC v. Stasko**, 282 F.3d 315 (4th Cir. 2002).

Standing generally requires a showing that plaintiff has suffered actual loss, damage or injury, or is threatened with impairment of his or her own interests.  This tends to assure that plaintiff has a sufficient stake in the outcome of the suit to make it a real "case or

controversy." ***Gladstone Realtors v. Village of Bellwood***, 441 US 91, 100 (1979).

The purpose of the standing requirement is clear. "Federal courts are not comprised of philosopher-kings or legislative aides, and the Constitution forbids us from pontificating about abstractions in the law or merely giving advice about the potential legal deficiencies of a law or policy when no ongoing controversy exists with respect to that law or policy." ***Incumaa v. Ozmint****,* 507 F.3d 281, 289 (4th Cir. 2007). Federal courts must decide live controversies and must avoid giving advisory opinions on abstract propositions of law. ***Id***. at 287.

The Supreme Court has provided guidance in this area:

> Our analysis must begin with the recognition that, where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced. The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction. For example, in ***Terrace v. Thompson****,* 263 U.S. 197 (1923), the State threatened the plaintiff with forfeiture of his farm, fines, and penalties if he entered into a lease with an alien in violation of the State's anti-alien land law. Given this genuine threat of enforcement, we did not require, as a prerequisite to testing the validity of the law in a suit for injunction, that the plaintiff bet the farm, so to speak, by taking the violative action. ***Id.,*** at 216. *See also*, *e.g.,* ***Village of Euclid v. Ambler Realty Co.,***

272 U.S. 365 (1926); ***Ex parte Young***, 209 U.S. 123 (1908). Likewise, in ***Steffel v. Thompson***, 415 U.S. 452 (1974), we did not require the plaintiff to proceed to distribute handbills and risk actual prosecution before he could seek a declaratory judgment regarding the constitutionality of a state statute prohibiting such distribution. ***Id.***, at 458-460. As then-Justice Rehnquist put it in his concurrence, "the declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity." ***Id.***, at 480. In each of these cases, the plaintiff had eliminated the imminent threat of harm by simply not doing what he claimed the right to do (enter into a lease, or distribute handbills at the shopping center). That did not preclude subject-matter jurisdiction because the threat-eliminating behavior was effectively coerced. *See* ***Terrace***, *supra*, at 215-216; ***Steffel***, *supra*, at 459. The dilemma posed by that coercion-putting the challenger to the choice between abandoning his rights or risking prosecution-is "a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate." ***Abbott Laboratories v. Gardner***, 387 U.S. 136 (1967).

***MedImmune, Inc. v. Genentech, Inc.***, 549 U.S. 118, 128-129 (2007).

## IV. Discussion

Defendant Weston asserts that plaintiff's injury in fact in this case arose from the denial of its application for a building permit to erect a billboard on school property pursuant to Section 4.10 of the City of Weston's Outdoor Advertising Ordinance [Doc. 41]. Accordingly, defendant asserts plaintiff lacks standing to challenge the constitutionality of

7

any provision of the Ordinance other than Section 4.10 because plaintiff cannot establish the requisite injury in fact to confer standing. (Id.). Weston asserts plaintiff's overbreadth challenge is an exception to the usual prudential standing requirement "that a party may assert only a violation of its own rights," *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988), which does not apply in this case because the overbreadth doctrine only creates an exception to the prudential standing inquiry. Specifically, "there is broad 'latitude given facial challenges in the First Amendment context,' a plaintiff must establish that he has standing to challenge each provision of an ordinance by showing that he was injured by application of those provisions." *Id*. at 429-30 (quoting *Gonzales v. Carhart*, 550 U.S. 124 (2007). Accordingly, standing to challenge one provision "does not provide it a passport to explore the constitutionality of every provision of a sign regulation." *Id*. at 429.

Plaintiff asserts that it has standing to raise a facial challenge to the Ordinance on behalf of the noncommercial interests of third parties. Specifically, plaintiff argues its overbreadth challenge permits it to facially challenge the Ordinance in order to raise the protected First Amendment rights of others not currently before the Court under the theory that the Ordinance's existence may cause such third parties to refrain from otherwise constitutionally protected speech or expression. *See* **Broaderick v. Oklahoma**, 413 U.S. 601, 612 (1973). In **Lamar Advertising v. City of Douglasville, Georgia**, the Supreme Court recognized that parties "with a commercial interest in speech may facially challenge an ordinance, raising the noncommercial speech interests of third parties." 254 F.Supp.2d 1321 (N.D. Ga. 2003)(citing **Metromedia, Inc. v. City of San Diego**, 453 U.S. 490, 504

8

n.11 (1981).

This Court need look no further than the Fourth Circuit's opinion in **Brown v. Town of Cary**, 706 F.3d 294 (4th Cir. 2013). In that case, the Town contended the plaintiff lacked standing to challenge exemptions of its sign ordinance, and that only challenges to the provisions regulating the size and pigment of residential signs could be brought since only those restrictions caused him actual injury. In affirming the district court's rejection of this argument, the Court stated

> As the district court correctly noted, [plaitniff's] complaint alleges an infringement of his First Amendment rights stemming from the [ordinance's] allegedly content based exemptions. Inasmuch as the relevant content distinction derives from the Town's conscious choice to exempt certain signs from regulation, [plaintiff's] legal injury derives from the exemptions no less than from the substantive restrictions themselves, and he may therefore subject those exemptions to constitutional scrutiny. See **Ark. Writers' Project, Inc. v. Ragland**, 481 U.S. 221, 227, 107 S.Ct. 1722 (1987)(explaining that standing to challenge exemptions exists where "others similarly situated were exempt from the operation of a state law adversely affecting the claimant."); **City of Ladue v. Gilleo**, 512 U.S. 43, 50-51, 114 S.Ct. 2038 (1994). That is, after all, the essence of the content neutrality inquiry – analyzing what speech the Town has chosen to regulate and what speech it has chosen to exempt. Accordingly, we reject the Town's standing challenge and proceed to the merits of the [case].

706 F.3d 294, 300.

Upon review of the above, this Court finds the plaintiff has established its burden showing this Court's subject-matter jurisdiction. This Court will have a chance to review the merits at such time the defendant renews its Motion for Summary Judgment.

## Conclusion

Therefore, for the reasons stated above, Defendant City of Weston's Motion to Dismiss and Renewed Motion for Summary Judgment **[Doc. 41]** is **DENIED**. This Court grants leave for defendant to renew its Motion for Summary Judgment.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: June 18, 2018.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE